131 F.3d 150
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES f/u/b/o R Excavating Inc., Plaintiff-Appellant,
v.
PK CONTRACTORS INC., a Washington Corporation; Reliance
Insurance Co., a Pennsylvania Corporation,
Defendants-Appellees.
 No. 96-35765.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1997.
Decided Dec. 4, 1997.
 
 1
 Appeal from the United States District Court for the Western District of Washington, No. CV95-00605 WLD; William L. Dwyer, District Judge, Presiding.
 
 
 2
 Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,** Senior District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 This is an action under the Miller Act, 40 U.S.C. § 270(a)-(d), by the use plaintiff R Excavating inc:. ("RE"), a subcontractor, against PR Contractcrs, Inc. ("PK"), the general contractor, and Reliance Insurance Company ("Reliance"), the bonding company. The district court granted summary judgment for defendants and RE appeals. The district court had jurisdiction under 43 U.S.C. § 270b and 28 U.S.C. § 11331, and we have jurisdiction under 28 U.S.C. § 1291.
 
 
 5
 RE was awarded a subcontract to provide several hundred tons of fill to a Navy construction site in Snohomish County. The subcontract required RE to assume the same responsibilities to PK that PK assumed to the Navy.
 
 
 6
 The Navy-PK contract did not specify the haul route to be used but it included a map entitled "Vicinity Map/Haul Routes," a Haul Routes Clause, and a Permits and Responsibilities Clause. The Haul Routes Clause states:
 
 
 7
 Haul routes are indicated on the drawings. Contractor would be responsible for maintenance, repairs, traffic control, and daily sweeping of the 45th Avenue NE portion of haul routes located between 156th Street NE and 142nd Place NE. Compliance with state and local regulations regarding use of public roads is Contractor's responsibility.
 
 
 8
 The "Permits and Responsibilities Clause" adds:
 
 
 9
 The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State and municipal Laws, codes, and regulations applicable to the performance of the work.
 
 
 10
 The routes indicated on the map allow access to the north entrance of the site. RE planned to enter the site from the north by heading south on 51st NE and turning onto 144th Street NE, then turning right onto 45th Avenue NE which leads directly to the site.
 
 
 11
 Prior to submitting RE's bid, Glenn Rengen, President of RE, inspected the roads indicated on the map. He observed no conditions or posted restrictions indicating that the roads would be unavailable for the project nor did he have notice that Snohomist County would restrict RE from using the roads indicated on the map. RE's trucks were properly licensed and operated within weight and size restrictions.
 
 
 12
 Soon after RE was awarded the subcontract, Snohomish County notified it that the county would not issue the requisite haul route agreement until RE addressed the county's safety and other concerns, including RE's failure to obtain a conditional use permit for the Baker Pit from which the materials were to be hauled. The county further announced that it would initially limit and later prohibit RE's hauling from the Baker Pit unless RE obtained the required use permits and adequately addressed the county's safety concerns. Subsequently the county imposed additional restrictions, barring PE's trucks from 51st Ave. NE between 152nd NE and 144th NE, and thus preventing RE from entering the site from the north. These restrictions lengthened RE's haul routes and limited it to, 42 loads per day, reducing RE's productivity and increasing its costs. In this action, it sought reimbursement of the increased costs and recovery of overhead and profit.
 
 DISCUSSION
 
 13
 Summary judgment under Fed.R.Civ.P. 56 may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. This court reviews de novo both the grant of summary judgment, Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir.1994) (per curiam), and principles of contract interpretation applied to facts, Aetna Cas. and Surety Co. v. Pintlar Corp., 948 F.2d 1507, 1511 (9th Cir.1991).
 
 
 14
 The district court granted PK's motion because it found the contract did not contain any warranties that the roads would be available, stating:
 
 
 15
 The record shows without dispute that the contract documents contained no express warranty. There was no assurance that any particular Snohomish County Road could be used to any specified degree.... Neither the drawing [of the Vicinity Map/Haul Route] nor the related contract language can reasonably be read to imply a warranty that any particular road would be available regardless of local government restrictions.
 
 
 16
 Furthermore, the court determined that neither the Navy nor PK breached its duty to R Excavating because "RE's additional expense must be held to have resulted from its own acts and/or those of Snohomish County.... Miller Act liability cannot be premised on anything the county did as an independent third party."
 
 
 17
 On this appeal, RE contends that the contract documents contained an express warranty guaranteeing the availability of certain haul routes, that the warranty was breached and that PK and PK's Miller Act bond were liable for the resulting damages.
 
 
 18
 The interpretation of a contract is a question of law to be decided by the court. B.D. Click Co. v. United States, 614 F.2d 748, 752 (Ct.Cl.1980). Courts should interpret contracts according to certain established principles:
 
 
 19
 (i) that an interpretation which gives a reasonable meaning to all parts of a contract will be preferred to one which leaves a portion of it inoperative or superfluous; and (ii) that contract provisions should not be construed as conflicting unless no other reasonable interpretation is possible.
 
 
 20
 Morrison-Knudsen Co. v. United States, 397 F.2d 826, 842 (Ct.Cl.1968) (citing Hol-Gar Mfg. Corp. v. United States, 351 F.2d 972, 979 (Ct.Cl.1965)).
 
 
 21
 To demonstrate an express warranty and breach thereof, "the plaintiff must establish that (i) the Government assured the plaintiff of the existence of a fact, (2) the Government intended that plaintiff be relieved of the duty to ascertain the existence of the fact for itself and (3) the Government's assurance of that fact proved untrue." Kolar, Inc. v. United States, 650 F.2d 256, 258 (Ct.Cl.1981). "[A] warranty is an assurance by one party to an agreement of the existence of a fact upon which the other party may rely; it is intended precisely to relieve the promisee of any duty to ascertain the facts for himself. Thus, a warranty amounts to a promise to indemiify the promisee for any loss if the fact warranted proves untrue." Id. (quoting Dale Constr. Co. v. United States, 168 Ct. Cl. 692, 699 (Ct.Cl.1964)). Although an express warranty does not require formal words of creation, Everett Plywood and Door Corp. v. United States, 419 F.2d 425, 429 (Ct.Cl.1969), an express warranty does not exist absent specific language in the contract at issue. Walter Dawgie Ski Corp. v. United States, 30 Fed. Cl. 115, 127 (Fed.Cl.1993) (citing Ekco Prods. Co. v. United States, 312 F.2d 768, 771 (Ct.Cl.1963); Burgwyn v. United States, 34 Ct. Cl. 348, 360, (1899)).
 
 
 22
 RE contends that both the "Vicinity Map/Haul Route" and the Haul Routes clause "created an express warranty that truck access for construction purposes would be available through the north entrance of the site via the haul routes indicated on the contract documents." PK counters that the maps did not create a warranty, but that they were included as a depiction of "the major streets in the vicinity, and ... the location of the construction project."
 
 
 23
 We agree with the district court that the map does not create an express warranty; it offers no assurance that certain routes would be available for truck hauling. The map merely indicates the locations of the site, an airport, a school, and local roads. The map does not designate specific roads to use; while it contains a warning, "Do not haul on dashed roads (avoid passing by school)," it includes no directions with respect to which roads are to be used. The fact that the map contains a restriction against hauling on sections of two of the roads shown does not create an express warranty that the remaining roads would be available for hauling. RE's argument that the title of the diagram, "Vicinity Map/Haul Routes," creates a warranty is also without merit. The purpose of the diagram is to indicate the roads and other features in the vicinity of the project. Therefore, to conclude that the map is not a warranty of road availability does not render the title of the diagram "inoperative or superfluous."
 
 
 24
 Likewise, the Haul Routes Clause does not create an express warranty of availability. The clause simply explains the responsibilities of the contractor and subcontractor for maintenance and control of a portion of the haul routes and to comply with state and local regulations regarding use of public roads.
 
 
 25
 RE's principal argument relies or the contract language, "Haul routes are indicated on the drawing." But the reference to the roads as "haul routes" does no, warrant their availability. Because this language is descriptive of roads over which hauling under the contract will occur, it serves a function without constituting a warranty and thus is not "inoperative or superfluous."
 
 
 26
 Our conclusion that no warranty was made is reinforced by the provisions of the Permits and Responsibilities Clause. That clause squarely places on the contractor the responsibility for obtaining "any necessary licenses and permits," and of complying "with any Federal, State and municipal laws, codes, and regulations applicable to the performance of work."[1]
 
 
 27
 The judgment is AFFIRMED.
 
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and ma not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 RE's contention that the conditions Snohomish County imposed were unlawful is unavailing. The appropriate procedure would have been to bring a timely challenge in state court. But RE did nothing to challenge the conditions it now claims were unlawful